## J. F. PERKINS v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 13, 1924.

No. 23,856.

**Verdict that insecure handhold caused brakeman's fall, sustained.**

1. The evidence sustains a finding of the jury that a handhold, which it was the absolute duty of the defendant to furnish secure under the Safety Appliance Act, on a freight car on which the plaintiff, a brakeman, was working in interstate commerce, loosened and caused his fall.

**No prejudicial error in rulings on admission of declarations.**

2. Evidence of declarations of a witness consistent with his testimony is incompetent. A declaration of the plaintiff after the accident, properly receivable as a part of the res gestae, was rejected. It was erroneously received in rebuttal under the theory, which is an exception to the rule stated, that it is proper to show consistent statements when there is a claim by the adverse party of a late fazrication to meet recently arising exigencies. The court limited the use of such testimony to such effect as the jury should give it in connection with contradictory statements claimed to have been made by the plaintiff. It is *held* that there was no prejudicial error.

Action in the district court for Douglas county to recover $80,000. After the former appeal the case was tried before Flaherty, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $23,800. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*F. G. Dorety* and *A. L. Janes*, for appellant.

*Tom Davis, Ernest A. Michel, R. M. Haines* and *James B. Ormond*, for respondent.

DIBELL, J.

Action to recover for injuries sustained by the plaintiff while in the employ of the defendant in interstate commerce. There was a

[1]Reported in 199 N. W. 891.

verdict for the plaintiff. The defendant appeals from the order denying its alternative motion for judgment notwithstanding or a new trial.

The case was here on a former appeal after a verdict for the plaintiff. Perkins v. Great Northern Ry. Co. 152 Minn. 226, 188 N. W. 564. A reversal resulted. It was based on the submission as a ground of recovery of the plaintiff's claim that a negligent jerking of the train was a cause of his falling; and upon the admission of the plaintiff's testimony of a self-serving declaration made by him after the accident. These two matters are not involved on this appeal. The questions which we have are these:

(1) Whether the evidence justifies a finding necessarily included in the verdict for the plaintiff that the handhold on top of the freight car loosened and caused his fall.

(2) Whether there was prejudicial error in permitting a witness to testify in rebuttal as to a declaration made by the plaintiff soon after the accident.

1. The facts are stated in the opinion on the former appeal. They do not much differ on this appeal and we refer to the former opinion for a statement of them.

The Safety Appliance Act requires "secure grab irons or handholds." 27 St. 531, c. 196, § 4; U. S. Comp. St. 1916, § 8608. The duty of the carrier to furnish them is absolute and the exercise of care does not excuse. St. Louis, I. M. & S. Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. ed. 1061; Great N. Ry. Co. v. Otos, 239 U. S. 349, 36 Sup. Ct. 124, 60 L. ed. 322; St. Joseph & G. I. Ry. Co. v. Moore, 243 U. S. 311, 37 Sup. Ct. 278, 61 L. ed. 741. If the handhold on the car on which the plaintiff was working loosened and caused his fall he should recover. If it did not, he cannot recover. The defendant's theory is that the handhold did not loosen, but that the plaintiff grabbed the hatch lever of the ice box and carried it with him as he fell between the refrigerator car and the tender. The hatch lever was found afterwards at the place of the accident with marks upon it as if made by car wheels, and with threads of a kind corresponding to the plaintiff's clothing ground

into it. Nearby was a shoe of the plaintiff. Blood was about. The plaintiff is positive that he did not grab the hatch lever. We conceive that he is mistaken. A concession that he grasped the hatch lever is not conclusive against his claim that the handhold loosened. If the handhold loosened as he turned about in descending he would have grasped for something involuntarily and the hatch lever was a likely thing to reach. If it were conceded that the handhold loosened the circumstance that the hatch lever was found where it was would not be inconsistent with the plaintiff's claim that the defective handhold was the cause of his injury. It hardly would be urged seriously against a recovery. It is only when there is proof that the handhold was not loosened that the presence of the hatch lever becomes important. Then it is important, for if the jury found that the plaintiff grasped the hatch lever and carried it with him, this it might conclude was enough to explain the accident, and so find more readily that the defendant was right and the plaintiff wrong with respect to the claimed condition of the handhold.

At the close of the testimony the action could not have been dismissed, nor if the defendant had rested then could a verdict have been directed in its favor, for the plaintiff's positive testimony, not greatly weakened by cross-examination, was that the handhold loosened and caused his fall. When given it was believable testimony. If a verdict ought to have been directed at the close of the testimony, and if judgment or a new trial must be granted now, it is because the testimony offered by the defendant overbears that of the plaintiff so that the law must say that the plaintiff's claim is wrong.

The conductor and brakeman who examined the car soon after the accident say they saw no defect in the handhold. Their examination was not under the most favorable conditions; but they should have seen a material defect. Neither noticed whether the hatch lever was on or off. The car inspectors made an examination in the Twin City yards the next day, some 30 hours after the accident. Their testimony is that the car and handhold, which seem to have been identified sufficiently, were in proper condition then. We

do not criticize these witnesses. Their testimony, like that of the plaintiff, is subject to human imperfections and to error and mistake and the influence of prejudice and interest, and is to be weighed by a jury as in the ordinary common law case. The testimony of the plaintiff that the handhold loosened still stands. If it loosened slightly it was not "secure," and a slight loosening, easily remedied, would account for the accident.

If we were trying the facts we would find that the handhold was not defective, and did not loosen. Our explanation of the accident, if we made one, would be that the plaintiff, jerked by a sudden movement of the train and slipping or about to fall grabbed the hatch lever and carried it with him. But the jury has found differently and the trial court is of the view that the verdict should stand. This is the second verdict for the plaintiff. We do not stress the effect of the first one. There were other issues then and a new trial was granted for error. In the opinion we purposely refrained from passing upon the sufficiency of the evidence. That there was an issue of fact is clear when we consider, as noted before, the necessary result of a motion to dismiss at the close of the plaintiff's case, or of a motion to direct if the defendant had rested then. If the result should be different now it is because the defendant's testimony overcomes that of the plaintiff; in other words, because the testimony of the plaintiff on the vital point is false, either mistakenly or wilfully, and the law should pronounce it so. We cannot hold so, and so we cannot grant judgment notwithstanding. It was within the discretion of the trial court to grant a new trial. We might grant a new trial, without making the law of the case for another trial, upon the ground that the evidence is so unsatisfactory that a new trial in the interest of justice should be had. Mullen v. Otter Tail Power Co. 134 Minn. 65, 158 N. W. 732. We think we should not do so. Our views are against the fact which the verdict establishes. It is not our province to determine the fact. That is for a jury. We should not remand the case for a new trial and another verdict. The injury occurred nearly four years ago. The litigation should end.

2. A witness testified on rebuttal as to what the plaintiff said about the loosening of the handhold when he was found by the side of the railroad an hour after the accident. It was in accord with what he said as witness. This testimony was offered in the case in chief as a part of the res gestae and was rejected. The rule is that declarations of a witness consistent with his testimony are incompetent to support it. The plaintiff seeks to sustain the testimony under the exception stated in State v. La Bar, 131 Minn 432, 155 N. W. 211, where the cases are collected, that antecedent statements consistent with the testimony of a witness may be shown where the adverse party claims a late fabrication to meet recently arising exigencies. See note 41 L. R. A. (N. S.) 890; 2 Wigmore, Ev. § 1126, et seq. We do not sustain the plaintiff's contention. The rule embodied in the exception is without application here. It would permit counsel, if inconsistent statements of his witness were shown, to prove generally that he had made prior consistent statements. It would result in an easy evasion of the settled rule.

When the case was here before it was said in the opinion that it was doubtful whether the testimony of the plaintiff's declarations was admissible under the res gestae rule.[1] That statement evidently influenced the trial judge in rejecting it when offered as part of plaintiff's case in chief. On further consideration we conclude that the statement should not have been made. It did not bear upon the questions decided. We are of the opinion that it was within the discretion of the trial court to receive the testimony as a part of the res gestae. See Clark v. Davis, 153 Minn. 143, 190 N. W. 45, and cases cited; Ahlberg v. Griggs, 158 Minn. 11, 196 N. W. 652. The defendant could not have complained if it had been received as substantive evidence of the facts declared. It was received for another and narrower purpose, to which the court limited its effect. A party who has no right to have evidence excluded when it is offered to substantiate his adversary's case, is not prejudiced if the evidence is received when subsequently offered for another and more limited purpose even though it was not admissible for that purpose. If the testimony should have been received as

[1] 152 Minn. 233.

substantive evidence, defendant was not prejudiced by the court's charge that it should be considered only in connection with plaintiff's alleged contradictory statements.

Order affirmed.

QUINN, J. (dissenting.)

I dissent. Mr. Robinson, the conductor who had charge of the train, testified that he inspected the safety appliance on the car within two hours after the accident, and that the handgrip in question was in its proper place on the car, and was neither loose nor bent, and that the bolts and burrs which held it to the roof were apparently in perfect condition.

The witness Whitten testified that, on the day following the accident, he took photographs of the car including the handgrab, which showed it to be in place; that he used the same in climbing onto the car; and that he took a measurement of it and it was in place and firm and solid.

Mr. Christianson, the section foreman, testified that on the morning of the accident, he found a hatch lever with blood spots and some blue threads on it, on the ground near the track where the accident occurred; and that, within a foot or two, he found blood spots on the ground and track, and a bloody coat and shoe.

Mr. Malley, the car repair foreman in company with two other repairmen, Mr. Piche and Mr. Moody, inspected the car on the day following the accident. Each of these men testified that the hatch lever was missing; that the handgrip was in place and that it was firm and solid; and that there was no appearance on the threads of the bolts of its having been recently removed. The testimony of these witnesses stands undisputed in the record. It was the theory of the defendant that plaintiff grabbed onto the hatch lever instead of the handgrip, and that it pulled loose and let him fall. The hatch lever was no part of the safety appliance. The action is under The Federal Employers Liability act. It is not a common law action for negligence.

The testimony of the several witnesses, bearing upon the condition of the handgrip on the morning and day following the acci-

dent, stands undisputed except alone by such inference as may be drawn from the plaintiff's testimony as to how the accident occurred. He testified that it was dark; that he had set his lantern down on the running board, and that he sat down on the trap door with his face toward the locomotive; that, when about to descend the ladder, he took hold of the handgrip at the end near the trap door lever; that as he was about to or in the act of swinging around, the car gave a sudden jerk, and that the handgrip pulled out because he felt the end of it pull through his hand. In this we are forced to the conclusion that the plaintiff is mistaken. Judging alone from all the evidence in the case, including the undisputed surrounding physical conditions, we are satisfied that the proofs are overwhelmingly in favor of the contention of the appellant, as to how the accident occurred. Had the trap door lever been in its proper place, that is, in the slot of the hasp, with bolt in place, a sufficient number of men to have pulled it from its mooring, could hardly have got hold of it with their hands. It must have been out of the slot, in which condition the plaintiff could easily have grabbed hold of it, pulled it loose and caused it to go with him to the ground below. The certainty of this theory is made almost absolute by the testimony of the several men regarding the handgrip almost immediately following the accident. There was no attempt to impeach either of such witnesses. They were apparently honest, sober men, engaged in their laborious vocation. They could not have been mistaken as to the condition of the handgrip on the day following the accident. Either their testimony was true or it was wilfully false.

There appears no motive for the witness Whitten to have given false or colored testimony. He went up the ladder to the top of the car, took hold of the handgrip in question, and then took a photograph of it. He could not be mistaken as to whether the handgrip was in place. Either it was in place or the witness is one of the worst of perjurers. It requires no stretch of reasoning to understand how the respondent might have been mistaken as to whether it was the trap door lever, or the end of the handgrip, which he says he felt pull through his hand.